Jerrold R. WILDENAUER, D.C.; Steven B. Ross, D.C.; Lori R. Robbins, D.C.; and Thomas G. Asbel, D.C. on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF MINNESOTA; J.L. Lawton, D.C., individually and as an officer of Utilization and Review Services of America, Inc.; Robert E. Williamson, D.C., individually and as an officer of Utilization and Review Services of America, Inc.; Utilization and Review Services of America, Inc.; Chiropractic Care of Minnesota, Inc.; Thomas J. Allenburg, D.C., individually and as an officer and director of Chiropractic Care of Minnesota, Inc.; and John Does and Mary Roes 1–100, Defendants.

Civ. No. 3–88–0134.

United States District Court,
D. Minnesota,
Third Division.

Oct. 31, 1989.

Emmett J. McMahon, Mahoney, Walling and Kelley, P.A., Minneapolis, Minn., for plaintiffs.

Terry J. Bartz, Stich, Angell, Kreidler and Mohr, P.A., Minneapolis, Minn., for defendants Blue Cross and Blue Shield of Minnesota, J.L. Lawton, Robert E. Williamson and Utilization and Review Services of America.

James B. Lynch, J. Thomas Vitt, Dorsey and Whitney, Minneapolis, Minn., for defendants Chiropractic Care of Minnesota, Inc. and Thomas J. Allenburg, D.C.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the court on defendants' motions for dismissal for failure to state a claim or, in the alternative, summary judgment in this antitrust action.

### FACTS

This lawsuit concerns the allocation of chiropractic care under Blue Cross and Blue Shield of Minnesota's (Blue Cross') Aware Gold program. Blue Cross is a non-profit Minnesota corporation which contracts with medical doctors, chiropractors, dentists, etc. to provide health services to Blue Cross' subscribers. As a third-party payor of health care service plans, Blue Cross is regulated by Minn.Stat. § 62C.01 *et seq.*, which, among other things, requires that each service agreement include cost-containment provisions including peer review procedures and that Blue Cross seek the lowest prices for the services purchased. Consequently, Blue Cross generally pays only for "medically necessary" care.

Plaintiffs are Minnesota chiropractors who have contracted or continue to contract with Blue Cross to provide care to subscribers in the Aware Gold program. The plaintiffs take issue with several cost-containment provisions which apply to chiropractors, including a twenty-two visit per patient per year guideline, pre-authorization for certain procedures, and a peer review mechanism in which an outside chiropractic consultant determines the chiropractic necessity of treatment provided to subscribers. Plaintiffs were also placed on probation, receiving only 70% compensation for services provided, and several were dropped from Aware Gold.

In 1986 Blue Cross contracted with defendant Chirocare of Minnesota, Inc. to provide the peer review services. Chirocare developed the program pursuant to Blue Cross' request. Chirocare was founded in 1984 as a non-profit corporation of Minnesota chiropractors with the goal of marketing chiropractic care to third-party payors such as Blue Cross. Chirocare, concerned with the potential conflict of interest involved in both promoting and reviewing the chiropractic profession in Minnesota, then assisted in forming defendant Utilization Review Services of America (URSA). URSA now performs peer reviews for Blue Cross.

The plaintiffs' complaint, in essence, alleges that Blue Cross, Chirocare, and URSA, along with the officers of the peer-review corporations, have combined to restrain trade. More specifically, plaintiffs allege that Blue Cross is controlled by medical doctors who seek to eliminate chiropractors from the market for musculoskeletal injury treatment. This alleged combination, complain the plaintiffs, violates sections 1 and 2 of the Sherman Anti-Trust law, Minnesota Antitrust law, and Minnesota common law.

As support for these allegations, plaintiffs offer the following evidence. First,

regarding Blue Cross' relationship with Chirocare and URSA, they submit evidence that Chirocare developed the peer review plan for Blue Cross and that Blue Cross' president has communicated to Chirocare his opinion that there are too many chiropractors for the Minnesota market. Plaintiffs additionally rely on the difference between the peer review system for medical doctors as opposed to chiropractors. Medical doctors, among other things, are not subject to pretreatment authorization on some services, and when a bill is challenged, can choose a satisfactory third party for peer review.

The defendants now move for a Rule 12(b)(6) dismissal or, in the alternative, summary judgment on plaintiffs' antitrust claims, asserting that plaintiffs have failed to allege or offer evidence of any antitrust violations. The court grants defendants' motions in the manner explained below.

## DISCUSSION

Under Fed.R.Civ.P. 12(b)(6), a claim must be dismissed if, assuming the allegations of the complaint to be true, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where the record indicates "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When a defendant is the moving party, summary judgment should be granted if the defendant shows there is no evidence supporting a particular element of the plaintiff's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Under Section 1 of the Sherman Antitrust law, "Every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. There are three elements to a Section 1 violation: 1) a contract, combination or conspiracy among two or more persons (concerted action); 2) which unreasonably restrains trade (antitrust injury); and 3) is in or affects interstate commerce. *United States v. Yellow Cab Co.,* 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947). In antitrust cases, "to survive a motion for summary judgment or for a directed verdict, a plaintiff seeking damages for violation of § 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." *Matsushita,* 475 U.S. at 588, 106 S.Ct. at 1356 (quoting *Monsanto Co. v. Spray Rite Service Corp.,* 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984)).

In the instant case, plaintiffs' section 1 antitrust claims fail for two reasons: lack of concerted action, and lack of antitrust injury. The courts have almost unanimously treated third party payors of health services as *purchasers* rather than *providers* of health care. *See Zinser v. Rose,* 868 F.2d 938 (7th Cir.1989); *Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.,* 784 F.2d 1325 (7th Cir.1986); *Kartell v. Blue Shield of Massachusetts, Inc.,* 749 F.2d 922 (1st Cir.1984); *Royal Drug v. Group Life and Health Ins. Co.,* 737 F.2d 1433 (5th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 925 (1985); *Pennsylvania Dental Association v. Medical Service Association of Pennsylvania,* 745 F.2d 248 (3rd Cir.1984); *Medical Arts Pharmacy of Stanford, Inc. v. Blue Cross and Blue Shield of Connecticut, Inc.,* 675 F.2d 502 (2nd Cir.1982).

The consequences of this characterization of third party payors as *purchasers* are twofold. First, because purchasers are free to make their own purchasing decisions, consultation with health care professionals for peer review services does not constitute concerted action under section 1. *See, e.g., Pennsylvania Dental,* 745 F.2d at 260. Only where health care providers actually *control* the third party payor will courts treat peer review arrangements as concerted activity. In such cases the third

party payor is treated as a *provider* as well. *See Pennsylvania Dental,* 745 F.2d at 256 ("[concerted action] is dependent upon proof that participating dentists, through their majority membership on the two Blue Shield committees, actually controlled the establishment of the UCR system implemented by Blue Shield"); *Va. Academy of Clinical Psy. v. Blue Shield of Va.,* 624 F.2d 476, 481 (4th Cir.1980) (Physician Control of Blue Shield Plan as mandated by Virginia statute satisfied concerted activity requirement). Second, decisions unfavorable to certain providers merely harm a competitor, not competition. Antitrust injury does not occur. *See, e.g., Zinser,* 868 F.2d at 941–42.

In the instant case, plaintiffs have failed to meet the concerted action or antitrust injury requirement. The complaint does allege that Blue Cross is controlled by medical doctors; but even assuming this allegation withstands a 12(b)(6) challenge,[1] plaintiffs have not produced any evidence showing that Blue Cross should be treated as a provider organization rather than a purchaser. The record indicates that Blue Cross unilaterally initiated the policies in question and contracted with Chirocare to implement some of them. Evidence that Chirocare contacted doctors in devising the specific peer review services and subsequently formed URSA to conduct them is irrelevant. Rather than showing a combination of providers, this evidence is consistent with Blue Cross' role as a purchaser bound to seek lower prices. Indeed, Blue Cross' by-laws *prohibit* control by health care providers. Under *Matsushita,* 475 U.S. at 596–97, 106 S.Ct. at 1361–62, summary judgment is appropriate on plaintiffs' section 1 claims.

Plaintiffs also contend that summary judgment is premature and request more time for discovery, yet provide no explanation for the failure to present a genuine issue of material fact. This contention is insufficient to preclude summary judgment. *See* Fed.R.Civ.P. 56(f).

▰ Plaintiffs additionally claim in several counts that defendants violated section 2 of the Sherman Act. Summary judgment is also appropriate on these claims. For reasons stated above, plaintiffs have failed to show antitrust injury, which is also required under 15 U.S.C. § 2. *Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 892 (8th Cir.1978). Again, plaintiffs can not overcome Blue Cross' status as a health-care purchaser seeking low prices for its subscribers from providers who are free to contract with others. The evidence establishes that plaintiffs are not satisfied with their relationship with Blue Cross; it does not establish that they have been eliminated from the market for musculo-skeletal care in Minnesota. Regarding plaintiffs' claims of "conspiracy" to monopolize, as noted above, the concerted action requirement is not satisfied. *See Westborough Mall v. City of Cape Girardeau,* 693 F.2d 733 (8th Cir.1982).

Because summary judgment is appropriate on all of plaintiffs' federal antitrust claims, the court declines to exercise subject matter jurisdiction over plaintiffs' pendent state-law claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, IT IS ORDERED that:

1. The summary judgment motions of Blue Cross, Chirocare, URSA, Dr. Lawton, Dr. Williamson, and Dr. Allenburg are GRANTED with respect to plaintiffs' federal antitrust claims.

2. Plaintiffs' state-law claims are dismissed without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**1.** *See Blue Shield of Virginia v. McCready,* 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982).